DAVID P. WILLIAMS, Administrator, &c., of S. S. PRENTISS, for the
use of WYCHE & HAMMET, *v.* GOVEY HOOD.

Motion to dismiss appeal, on the ground that W. & H. had not joined in the appeal bond. *By the
Court:* The order of appeal is in favor of the plaintiff, generally, and it was not necessary that
the appeal bond should be signed by W. & H. The signature of the surety is sufficient.
The fact that the tutrix of P.'s children made herself a party to the suit is no evidence that W. & H.
have abandoned the appeal. The tutrix is a proper party, for the legal title to the bill sued
on is in the succession of P.
In a suit on a bill of exchange by an administrator, the defendant will not be permitted to attack
the legality of the appointment of the administrator.
The defendant has no right to complain of the mode in which this suit is brought, for it gives
him the opportunity of pleading any defences he may have against either the nominal or the
real plaintiff.
It is not competent for a party, against whom one of his letters is offered in evidence, to show
by the parol evidence of the witness who wrote the letter for him that he "intended" something
different from what the letter expresses.

APPEAL from the District Court, Tenth District, Parish of Carroll, *Per-
kins, Jr.,* J.　*Short & Parham,* for plaintiff and appellant.　*Selby,* for
defendant.

SPOFFORD, J.　The administrator of the succession of the late *Sargeant S.
Prentiss* brought this suit against the drawer of a bill of exchange, duly pro-
tested both for non-acceptance and non-payment.

The bill was drawn by the defendant to the order of *S. S. Prentiss,* but
never endorsed by the latter.

The petition alleges that shortly after the bill was drawn, the commercial
firm of *Wyche & Hammet* advanced money on it to *Prentiss,* who delivered
the instrument to them.　The suit is brought for their use.

There was a judgment in the District Court for the defendant, and the plain-
tiff appealed.

Pending the appeal in this court the suit was revived in the name of *Mrs.
Prentiss,* tutrix of the minor heirs of *S. S. Prentiss,* upon a suggestion that
the administrator was *functus officio.*

Our attention is called to a motion to dismiss the appeal.

The first point made seems to be that the real plaintiffs in interest, *Wyche &
Hammet,* have not joined in the appeal bond.

The order of appeal is in favor of the plaintiff generally, and it was not
necessary that the appeal bond should be signed by *Wyche & Hammet.* The
signature of the surety is sufficient.　*Fish* v. *Friend,* 3 Rob., 264; *Wells* v.
*Lamothe,* 10 L., 411; *Bank* v. *Erwin's Heirs,* 6 L., 324; *Doane* v. *Farrow,* 10
M., 74; *Richardson* v. *Terrel,* 9 M., 34.

The other point in the motion to dismiss is that *Wyche & Hammet,* the real
plaintiffs, have abandoned the appeal.　We find no evidence of this in the fact
that *Mrs. Prentiss,* tutrix, has made herself a party to the suit, instead of the
administrator.　She is a proper party, for the legal title to the bill is still in
the succession of *Prentiss.*　The equitable interest of *Wyche & Hammet* is
only to the extent of their advances to *Prentiss,* who seems to have handed
them the bill as collateral.

In his answer, it was first alleged by the defendant that *David P. Williams*
was a non-resident of the State, and that his appointment as administrator of

a Louisiana succession was therefore a nullity, so that he was incompetent to sue for debts due the succession.

The defendant could not be permitted to attack the judgment appointing an administrator in this collateral manner.

It was also contended by the defendant that the administrator could not give away the funds of the estate by suing for the use of third persons.

The administrator gave away nothing. The legal title, and perhaps a residuary interest being in the succession, the administrator acted properly in bringing the suit in his representative capacity, and for the use of *Wyche & Hammet*, who had advanced money to the deceased intestate upon the draft.

The defendant certainly has no right to complain of the mode in which the suit is brought, for it gives him an opportunity to plead any defences he may have as against either the nominal or the real plaintiff. *Dayton* v. *Commercial Bank*, 6 Rob., 18.

This is a sufficient answer to the argument of the defendant, that *Wyche & Hammet*-were only interested to the extent of $500 or $600, whilst the draft is for $1550, and that the debt cannot be divided without the assent of the debtor.

The whole bill is sued for, and all the parties interested in its collection are named in the pleadings, so as to give the defendant the widest latitude in his defence.

The distribution of the money, if collected, is a matter to be settled between the succession and *Wyche & Hammet*, and does not concern the defendant.

We now come to the merits of the cause—the motion to dismiss and the exceptions being overruled.

The defence, which was successfully pleaded in the inferior court, is that the draft was given to retain the deceased payee as counsel in a suit which the respondent contemplated recommencing, in which *Mr. Prentiss* had been previously engaged and paid, and in which a nonsuit had been taken ; that it was given at the urgent request of *Mr. Prentiss*, when he was in declining health, and shortly before his death, with a view to enable him to raise money for a journey to recruit his health, that he might be able to prosecute the suit upon his return ; but that, in consequence of his premature death, the consideration of the draft wholly failed.

We are unable to concur in the views taken by the District Judge of the evidence offered in support of this defence.

The agreement of the parties was in writing. After reciting that *Hood* was involved in a lawsuit *then pending*, touching the validity and genuineness of a will of his sister, *Lucinda Chambliss*, in which the said *Hood* was instituted heir, and that he was desirous of obtaining the professional services of *Mr. Prentiss* in the *said litigation*, the latter bound himself to render such services in establishing the will, and attending to the litigation incident thereto, until the final decision of the question of the validity of said will, and for that purpose to attend the court in Carroll, or any other parish where such litigation might be pending, as often as necessary, and to argue said cause in the Supreme Court, should it be taken there.

And in consideration thereof, *Hood* on his part bound himself to pay said *Prentiss* the sum of $2500 as a certain fee—to wit, $1000 cash in hand, and the remaining $1500 *at the conclusion of the suit*. And *Hood* further agreed to pay said *Prentiss*, in case the will should be established as valid, the addi-

tional fee of seven and one-half per cent. upon the value of the property embraced in the will which *Hood* should receive, by establishing the validity thereof.

The $1000 were paid in February, 1849, upon the execution of the agreement.

*Mr. Prentiss* attended to the suit, and made a journey to the parish of Morehouse, whither the venue was changed, and where *Hood's* counsel, as was stated in the argument, took a voluntary nonsuit in the fall of 1849; of this no complaint is made by *Hood*, and the step must be presumed to have been taken in his interest.

In June, 1850, *Prentiss* wrote a letter to *Hood*, in which he disclosed his illness and his need of funds to enable him to follow the advice of his physician, in seeking the restoration of his health by a change of climate. The letter contains the following explicit statements: "By our agreement, in relation to your suit in the *Chambliss* will, the remainder of my certain fee—to wit, $1500, *is now due*. General Thomas informed me you settled with him, giving your draft on your merchants here, payable in December next. I must request you to make for me a similar arrangement. I send you a draft to be signed by you and directed to your merchants here, payable 1st January, which I hope will suit your convenience. I have added in interest at six per cent. from date, though it will cost me twice that, at least, to get the draft discounted." At the conclusion, he added that he hoped to return from the Virginia mountains in the fall, strong and vigorous, and ready to carry out such future proceedings as *Hood* might determine on against *Chambliss* and *Wilson*, whether as regards compromise or another suit.

To this letter *Hood* replied in a few days, by acceding literally to the request of *Prentiss*, and sending him the draft now sued on. The reply does not, even by implication, contest the assertion of *Mr. Prentiss* that the money was then due, under the terms of the original agreement. On the contrary, the bill itself bears upon its face an implied acknowledgment that it was due, for it was drawn, not for the sum of $1500, simply, but included an additional sum of $50 as interest for the delay that would elapse before its maturity.

We have here, then, in the writings and acts of the parties, their own interpretation of the meaning of that clause in the original agreement, which stipulated that the $1500 should be paid "at the conclusion of the suit." However obscure its meaning might have been without such aids, we are compelled to infer that this clause really meant the conclusion of the particular suit then pending, and that the amount was due when the draft was drawn.

The District Judge would probably have come to the same conclusion but for the oral testimony of a witness, who said that he wrote the reply to the letter of *Mr. Prentiss* for the defendant, *Hood*, (who signed it,) and that he was "*satisfied*" that, so far as *Hood* was concerned, he *intended* the draft sued on as accommodation paper, and witness *intended* to embrace the same idea in the letter he wrote to *Prentiss* for *Hood*. Witness further states that he *intended* in the letter to say that the $1500 was not due, but was to be given for service yet to be rendered."

This vague testimony as to unrealized intentions affords an illustration of the wisdom of that ancient rule of evidence which forbids that written instruments shall be contradicted or controlled by parol.

WILLIAMS
*v.*
HOOD.

The plaintiff excepted to the competency of the testimony, and we think the exception should have been sustained. It is urged here, however, that the objection was raised too late. The District Judge did not think so, for he signed the bill of exceptions without intimating any such reason for his ruling, but assigned as the true reason the fact that the witness wrote the letter at the request of *Hood.*

We are bound to presume, then, that the objection was raised and the bill of exceptions tendered seasonably.

The money being due according to the terms of the agreement, as practically construed by the parties themselves at the time the draft was drawn, the subsequent death of *Mr. Prentiss* did not discharge the drawee, *Hood*, from his obligation to pay it, any more than it gave him an action for the repetition of the $1000 he had paid at first, in contemplation of services to be rendered by *Mr. Prentiss*, "until the final decision of the question of the validity of the will."

It is therefore ordered that the judgment appealed from be reversed; and, proceeding to render such judgment as should have been rendered, it is ordered, adjudged and decreed, that *Mrs. Prentiss*, as tutrix of the minor heirs of *S. S. Prentiss*, suing herein for the use of *Wyche & Hammet*, do recover of the defendant, *Govey Hood*, the sum of fifteen hundred and fifty dollars, with five per cent. interest thereon, from the 4th January, 1851, until paid, and the costs of suit in both courts.